ALFRED B. McCHESNEY et al.

v.

THE CITY OF CHICAGO.

*Opinion filed February 18, 1903.*

1. SPECIAL ASSESSMENTS—*when error to include cost of making assessment.* It is error to include the cost of making and collecting a special assessment in a judgment of confirmation entered after the act of 1901, prohibiting such course, took effect.

2. SAME—*when ordinance sufficiently specifies width of roadways.* An ordinance sufficiently specifies the width of roadways to be paved which declares that such roadways comprise a specified number of feet upon each side of the center line of the streets named.

3. SAME—*word "grade" includes all that need be done to put roadway in condition.* An ordinance providing that the roadway of streets shall be graded need not specifically state that the low places of the street shall be filled and the high places cut down, as the word "grade" naturally includes such action.

4. SAME—*when ordinance is not uncertain with respect to grade.* An ordinance is not uncertain as to grade which establishes a grade line with reference to a fixed datum, and provides that after the roadway is thoroughly graded and compacted and the pavement of a certain described thickness is placed thereon, the center surface of the finished roadway shall be three inches above the established grade of the streets.

5. SAME—*variance must be willful or substantial to be available.* A variance between the ordinance and the petition and between the first resolution of the board and the ordinance must be shown to be willful or substantial to be available as an objection to confirmation of the assessment.

6. SAME—*the engineer's estimate need not appear in extenso in board's resolution.* Section 7 of the Local Improvement act of 1897, providing that the board of improvements shall cause an estimate of the cost of a proposed improvement to be made, in writing, by the engineer, over his signature, "which shall be made a part of the record of such resolution," does not require that such estimate be set out *in extenso* or *in hæc verba* in the resolution.

7. SAME—*resolution may be adopted by majority of board.* The final resolution for an improvement may be adopted by a majority of the board. (*Gage* v. *Chicago,* 196 Ill. 512, followed.)

8. SAME—*notice of adjourned meetings is unnecessary.* If sufficient notice of the first meeting to consider a proposed improvement is given, the board may adjourn the meeting from time to time, and

it is the duty of parties desiring to present objections to attend the adjourned meeting without further notice.

9. Same—*five days' notice of public meeting is reasonable.* Five days' notice of the first public meeting of the improvement board for the consideration of a proposed improvement is reasonable.

Appeal from the County Court of Cook county; the Hon. Orrin N. Carter, Judge, presiding.

F. W. Becker, and Jas. M. Cleaver, for appellants.

Robert Redfield, (Charles M. Walker, Edgar Bronson Tolman, and William M. Pindell, of counsel,) for appellee.

Mr. Justice Ricks delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county confirming a special assessment against appellants' property for paving Vernon avenue, Sixty-fourth, Sixty-fifth and Sixty-sixth streets, in the city of Chicago, with crushed limestone and granite top dressing.

It is objected by appellants that the ordinance contravenes the act of 1901, in that it provides that the cost of making and collecting the assessment shall be paid by special assessment. The proceedings were instituted prior to the date that act took effect, and judgment was entered on June 13, 1901,—more than a month after the act went into effect. It was therefore error to include the cost of making and collecting the assessment. *Gage* v. *City of Chicago,* 196 Ill. 512; *Thompson* v. *City of Chicago,* 197 id. 599.

Appellants contend that the ordinance is uncertain and incomplete in that it fails to state the width of the roadways that are to be paved, or that there was at that time any roadway, in fact, on said streets. The ordinance provides that on Vernon avenue and Sixty-sixth street the roadway is forty-two feet in width, and on all the other streets included in the improvement the roadway is thirty-eight feet in width. It then provides for

the setting of sandstone curb-stones on edge along their length on each side of "the roadways" of each of the said streets, except at the intersection of streets and alleys, "in such a manner that the roadway face of said curb-stones shall be parallel with and twenty-one feet from the center line of said Vernon avenue," twenty-one feet from the center line of Sixty-sixth street and nineteen feet from the center of all other streets in the district of said improvement. We think the foregoing sufficiently shows that the roadways of the streets in question are described with all necessary particularity, as in each case the center of the street is taken as the point of measurement and the roadways of the various streets are declared to comprise a specific number of feet on each side of the center line, and we do not think that the oral evidence in any degree affected those provisions of the ordinance, or that the cases cited (*Chicago and Northern Pacific Railroad Co.* v. *City of Chicago*, 174 Ill. 439, and *Gage* v. *City of Chicago*, 143 id. 157,) have any application.

Appellants' contention that the ordinance fails to state of what "the gutters, their summit, slope, grades, * * * are to be constructed, their width, or whether they are or are not included within the term roadway," is not well taken. This is not a combined curb and gutter, but the gutter mentioned is a portion of the pavement, which is adjacent to and adjoining the roadway face of the curb-stones, and is necessarily of the same material and constructed in the same way as the remaining portion of the pavement of which it is a part. The ordinance provides as to these gutters that the outer edge of the gutters next to the curb-stones shall be three inches below the established grade; that the slope of the gutters shall be uniform, and that a transverse section of each side of the finished roadways shall be a true arc of a circle passing through said gutter grade and through the grade of the center of said finished roadways, and, as we understand the language of the ordinance, it sim-

ply means that the gutter is formed by the curb-stone
and the natural slope of the street, or the face of the
pavement, from the point at the center of the roadway
three inches above grade to a point at the curb line three
inches below grade.

The validity of the ordinance is further challenged on
the ground that the grade of the roadway or pavement
is by the terms thereof so uncertain that it cannot be
told whether the street, when paved, will be fifteen and
one-half inches above grade, under one phase of it, or
three inches above grade, under another phase of it. We
think, upon reading the ordinance, that these questions
arise more from a misapprehension of counsel than from
any imperfection or ambiguity in the ordinance. By the
ordinance a certain datum point, to-wit, low water in
Lake Michigan in 1847, is fixed, and proper reference is
made to records where the same may be found; that up-
on each of the streets a grade line is to be established
with reference to this datum point, and the distances
above or below the datum point of this grade line are
specified. The ordinance then provides: "Said roadways
on the several streets specified above  *  *  *  shall
be so graded that after being thoroughly puddled and
rolled with a roller of ten tons weight until the several
road-beds are thoroughly compacted and the pavement
hereafter described shall be placed thereon, the surface
of the pavements at the center of the finished roadway
of each of said specified streets  *  *  *  shall be three
inches above the established grade of said specified
streets." Then, after providing how the grades shall
be determined, the number of layers and the kind of
material, and the thickness of each layer, are specific-
ally described in inches and fractions thereof, so that the
whole pavement is of the thickness of fifteen and one-
half inches, the provision of the ordinance being, that the
roadways shall be so graded as, when graded and paved,
they will be three inches above the grade line mentioned.

We do not deem it necessary, as counsel for appellants insist, that the ordinance should have stated that the low places should be filled and the high places excavated and the whole leveled, but that the word "grade," used in the ordinance, taking the whole context, properly and naturally includes all that is necessary to be done to put the roadway in the condition required.

Appellants contend that there is a fatal variance between the petition and the ordinance and the first resolution of the board and the ordinance. We do not think there are any serious questions of any variance. It is simply a construction of the language of the ordinance, petition and resolution; and even if there were a variance, there is no showing that it was either willful or substantial. *Field* v. *City of Chicago*, 198 Ill. 224.

The objection discussed relating to the estimate of cost of work cannot be sustained. We think that the term "for the adjustment of sewers, catch-basins and man-holes" may be properly construed to mean such arrangement of the man-holes and catch-basins, with reference to the sewers, that they will subserve the purposes intended for them, and that the variance is not substantial.

The point made that the certificate of the superintendent of special assessments shows that the property in the district of the proposed improvement would derive no benefit from the work is not well taken, as the record was amended, by leave of this court, after the appeal, showing that the estimate was that the property would be benefited $60,000.

The objection raised that the installments were not properly divided into multiples of $100 has been fully discussed and passed upon and the statute construed in *Gage* v. *City of Chicago*, 195 Ill. 490, wherein the facts were similar to those of the case at bar, and appellants' objection cannot be upheld.

Appellants further contend that the record of the first resolution of the board of public improvements fails

to show that the estimate of the cost of such improvement by the public engineer was in writing, and over his signature, and itemized, or that such report was made a part of the record of said resolution, which, they contend, was required by section 7 of the Local Improvement act of 1897, (Hurd's Stat. 1899, p. 363,) and that such omission is fatal. That section provides: "Said board shall also cause an estimate of the cost of such improvement * * * to be made in writing by the public engineer * * * over his signature, which shall be itemized to the satisfaction of said board, and which shall be made a part of the record of such resolution." The record of the resolution shows this statement: "The estimate of the costs of such improvement, made by the city engineer, being $60,000." A copy of the estimate and report of said engineer, made in writing, duly itemized and signed by said engineer, was attached to the recommendation by the board of local improvements submitting the ordinance to the city council. The original engineer's report does not appear in the record, as the bill of exceptions states upon that subject that the "usual formal proofs were made," and those matters of formal proof are not set out or included in the bill. It is not our interpretation of the statute that the report of the engineer shall be written in the resolution *in extenso* or *in hæc verba.* The direction is that the board shall cause the estimate to be made, and then the statute goes into detail as to how the estimate shall be made and reported to the board, and the words concluding the clause above quoted from the statute, "and which shall be made a part of such resolution," we think refer back simply to the estimate, and not to the evidence of the estimate.

Appellants' next objection is, that the final resolution for this improvement was not adopted by the whole board, but in the absence of two members, and is therefore insufficient. Three members were present, all of whom voted for the resolution. This contention has pre-

viously been passed upon by this court in *Gage* v. *City of Chicago,* 196 Ill. 512, where we held that if passed by a majority of the board the law was complied with.

It is also objected that the resolution was not adopted at the meeting of June 6, which was the first meeting for public hearing, but that it was adopted three months later, on September 5, after two postponements, and that no notices were mailed for the adjourned meeting. These objections are not well taken. The record shows that sufficient notice of the first meeting was given. The board had power to adjourn that meeting if it was unable to finish its business, or for any other proper cause, of which the board, in its discretion, might decide. It is the duty of persons who desire to object or to be heard, to attend the first meeting, and if they are not heard at that meeting because of an adjournment, when the adjournment is made in a regular way to a regular fixed time, then it is incumbent upon them to continue in attendance until they are heard. These meetings were regularly and properly adjourned until the final meeting, when the resolution was regularly adopted.

It is further contended that the notice of the first public meeting of the board of improvements, being given only five days in advance, was unreasonable. We think five days a reasonable and sufficient time. *Gage* v. *City of Chicago,* 196 Ill. 512.

Further questions are raised upon the evidence, relating chiefly to its sufficiency. They are of such character that, if true, the minds of lawyers would not differ about them; but inasmuch as this case must be reversed and remanded for the error first discussed, when a new trial can be had, it seems unnecessary to further extend this opinion for a discussion of these questions.

The judgment of the county court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*