HENRY H. GAGE

*v.*

THE CITY OF CHICAGO.

*Opinion filed February 21, 1902—Rehearing denied April 5, 1902.*

1. SPECIAL ASSESSMENTS—*when provision for house-slants is reasonable.* It is proper for a sewer ordinance to provide for one house-slant to each lot, tract or parcel of land, and also that the owners of the lots, tracts or parcels of land, and all unsubdivided lands lying within the drainage limits, shall at all times be entitled to the use and benefit of the sewer.

2. SAME—*division of assessment into installments—statute construed.* Section 42 of the Local Improvement act of 1897, (Laws of 1897, p. 116,) concerning the division of an assessment into installments, does not mean that each individual assessment must be divided into multiples of $100, but only that the "remaining installments of the aggregate" amount shall be each a multiple of $100.

3. SAME—*action of the board of improvements need not be unanimous.* It is sufficient if the resolutions for an improvement be adopted by a majority of the members of the board of improvements present.

4. SAME—*when it is error to include costs of assessment in judgment.* Under sections 94 and 99 of the Local Improvement act of 1897, as amended in 1901, (Laws of 1901, pp. 117, 118,) it is error to include the cost of making and collecting an assessment in the confirmation judgment, where the petition was filed after the amendatory act of 1901 went into effect.

APPEAL from the County Court of Cook county; the Hon. W. T. HODSON, Judge, presiding.

F. W. BECKER, for appellant.

E. B. TOLMAN, ROBERT REDFIELD, and WILLIAM M. PINDELL, (CHARLES M. WALKER, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county confirming a special assessment against the lands of appellant to pay for the construction of a sewer in West Addison street, in the city of Chicago, from the north branch of the Chicago river to a point two and a half miles west of said river.

The ordinance in this case is substantially the same as the one brought before this court in *Bickerdike* v. *City of Chicago*, 185 Ill. 280, with certain modifications, designed to obviate the defects condemned in that case. Several of the objections raised here were raised against the former ordinance and discussed and settled in the former case. It will not be necessary to discuss them again. Such are the objections as to the alleged unreasonableness and oppressive character of the ordinance on account of the size of the proposed sewer, and the fact that it will also drain the surface water from adjoining territory not included in the drainage district created by the ordinance and not assessed to pay for the sewer, and that because of the condition of the north branch of the Chicago river it constitutes no sufficient outlet for the sewer,

The former ordinance was condemned because it provided that house-slants should be placed opposite every twenty feet of lot frontage, and because there was no provision for lateral sewers, or any assurance to the owners of such lands that they would have the use of the sewer or be benefited in any manner by it. It is now objected that there is but one house-slant provided for each lot, tract, piece or parcel of land; that a forty-acre tract would have no more connections than a twenty-five-foot lot. There is a connection provided for each division of the land, be it tract or lot, and the ordinance provides that the owners and occupants of the lots, tracts, pieces and parcels of land, and all unsubdivided lands lying within the drainage limits, shall at all times hereafter

be entitled to the use and benefit of the sewer, and the right, permission and authority are given them to connect with said sewer. Their rights to the use of the sewer are thus secured, and it cannot be said to be a hardship that they will have to make these connections hereafter, in conformity with the general ordinances of the city.

It is contended that the installment plan adopted in the ordinance is void, as being in contravention of the statute. The statute provides (section 42 of the act concerning local improvements) that the aggregate amount assessed, and also each individual assessment, may be divided into installments, and that such "division shall be so made that all installments shall be equal in amount, except that all fractional amounts shall be added to the first installment, so as to leave the remaining installments of the aggregate equal in amount and each a multiple of $100." (Hurd's Stat. 1899, p. 371.) The contention is, that this means that each individual installment must also be a multiple or sub-multiple of $100, so that the tax-payer would be able to pay his installment with an installment bond, as contemplated by the statute. The statute only provides for bonds of $100 and multiples thereof, and no mention is made anywhere of sub-multiples. We are of the opinion that the statute does not contemplate the division of each individual installment into multiples of $100, but that the "remaining installments of the aggregate" amount shall be each a multiple of $100.

It is contended that the action of the board of local improvements preceding the adoption of the ordinance by the city council is irregular and renders the subsequent proceedings void, in this: that the final resolution was adopted by the board in the absence of one member. We have held that it is sufficient if a majority of the board present adopts the resolution, and that the absence of a member does not vitiate the proceedings. *Gage* v. *City of Chicago*, 192 Ill. 586; *Same* v. *Same*, 193 id. 108.

It is further urged that another suit for this same improvement is pending. The suit referred to is the former case of *Bickerdike* v. *City of Chicago, supra*, reversed as to the property of appellants therein, and remanded. Appellant Gage was one of the appellants in that suit. On May 11, 1900, an order was entered in the former suit reciting that the city of Chicago had shown to the court that the Supreme Court had reversed and remanded said cause, and vacating all judgments and dismissing the petition. The mandate of this court was not filed until June 1, 1900. Notice was then given to the attorneys for objectors that the mandate had been filed, and that on June 11, 1900, motion to re-docket, to set aside judgment of confirmation and to dismiss the petition would be made by the city. On June 11, 1900, an order was entered re-docketing the case. On July 16, 1901, another order was entered, amending the record by vacating the judgments of confirmation and dismissing the petition. From this order amending the record appellant took an appeal. The amendment was made pursuant to the following entry on the clerk's minute book: "June 11, before Judge Carter, order vacatg judgt of conf disg petn and ord case be redocketed," and the notice of motion to re-docket. It is contended that the amendment was not one that could properly be made on the showing made by the clerk's minutes; that the sequence of the various orders in the amended order was different from the sequence in the clerk's minutes. This objection is without merit. The judgment could not be vacated without first re-docketing the case. We are of the opinion that there is no merit in the contention that there was another suit pending for the same matter.

It is urged that the ordinance is in contravention of the statute, because it provides that the sum of $4245, costs of making and collecting the assessment, shall be included in the special assessment. The petition herein was filed May 11, 1901, two days after the act amending

the Local Improvement act of 1897 went into effect, May 9, 1901. (Laws of 1901, p. 101.) That act amended section 94 so as to restrict the right to apply six per cent of the amount of the assessment toward the payment of the costs connected with the proceedings, and the costs of making and collecting such assessment, to cities having a population of less than 100,000. The amended repealing section 99 contains a proviso as to proceedings pending in any court when the Local Improvement act of June 14, 1897, took effect; that the laws subsisting at that time shall continue to apply. But this is followed by the following clause: "Where proceedings for local improvements to be made by special tax or special assessment shall have been instituted when this act shall take effect, and where the assessment provided for therein has not been confirmed by any court, all future proceedings thereunder shall be as herein provided, with the same effect as if such proceedings had been commenced in accordance with the provisions herein provided." The "proceedings" "instituted" mean proceedings instituted in court. This proceeding was instituted two days after the amendments took effect. It was then no longer lawful for cities having more than 100,000 population to include costs in the total amount of the special assessment. Although the ordinance was legal as to these costs when passed, it became inoperative as to such costs before the suit was instituted. The right to include these costs in the special assessment was not a vested right that could not be taken away by statute, but only an inchoate right,—a right not carried into judgment and not so far perfected as to stand independently of the statute. (*VanInwagen* v. *City of Chicago*, 61 Ill. 31.) As this right was not saved by the statute, the inclusion of these costs in the judgment was error.

The judgment must be reversed and the cause remanded.

*Reversed and remanded.*