Michael J. Bransfield and Sons et al., Appellees, v. City of Chicago, a Municipal Corporation, Appellant.

Gen. No. 46,846.

First District, First Division.

May 7, 1956.

Rehearing denied June 4, 1956.

Released for publication June 12, 1956.

John C. Melaniphy, Corporation Counsel of City of Chicago, of Chicago, for appellant; James G. O'Donohue, and Brian M. Kilgallon, Assistant Corporation Counsel, both of Chicago, of counsel.

Donovan, Sullivan & Jeffers, of Chicago, for appellees; John P. Sullivan, of Chicago, of counsel.

JUDGE NIEMEYER delivered the opinion of the court.

Defendant appeals from a judgment ordering the issuance of a peremptory writ of mandamus directed to defendant, its officers and agents, commanding them to forthwith perform their respective legal duties with respect to the payment to the respective petitioners, holders of special assessment securities, of sums totaling $16,408.22—charges of the County Clerk and County Collector theretofore deducted by the defendant from the amounts collected on delinquent special assessments by the sale of assessed properties to defendant.

The facts are not disputed. In 1930, 1931 and 1932 special assessments on thousands of parcels of land were unpaid and delinquent. Judgments were entered for these delinquencies and the parcels offered for sale. In default of other bidders, defendant bid in the parcels. The County Collector remitted to the defendant the money paid in at the sale, less the statutory costs of 88 cents on each lot, block, tract or parcel of land, being the County Collector's and County Clerk's costs and the printer's fees, and an amount equal to one per cent of the amount of the sale, the County Collector's commission for the sale of each lot, block, tract or parcel of land. These items were charged against each of the special assessment warrants from which the bonds of petitioners herein are payable.

■ In 1948 petitioners filed a petition for a writ of mandamus to compel the defendant and its officers to reimburse the special assessment warrants for these charges. Defendant pleaded laches as a bar to plaintiffs' suit. On motion of plaintiffs the defense was stricken. Defendant does not question this action of the court. The error, if any, in striking the defense is not argued and is waived. However, defendant argues that plaintiffs' right to a writ of mandamus is barred by laches, but points to no evidence supporting this claim. There is none in the record. The defense, if it

had been properly pleaded, is not tenable. As said in People ex rel. Gramlich v. City of Peoria, 374 Ill. 313, a mandamus action, the contention "that relators' action was barred by *laches* can not be sustained for it does not appear that any delay or neglect on the part of relators in bringing the action has misled appellees or caused them to adopt a course different from what they would have otherwise taken."

Defendant's further contentions are that article 84—94 of the Revised Cities and Villages Act (chap. 24, art. 84—94, Ill. Rev. Stats. 1955) authorizes the payment of the expense of collection of special assessments from the special assessment funds, and that the petition fails to set forth a clear and unequivocal right to the relief demanded.

From 1897, when the Boards of Local Improvements were authorized, to the present, the statute has provided that the expense of making and levying special assessments and special taxes shall be paid by the municipality out of its general fund, or general corporate fund. (Chap. 24, sec. 94, page 375, Hurd's Rev. Stats. 1897; chap. 24, art. 84—94, Ill. Rev. Stats. 1955.) During that period, excepting the years 1901 to 1917, the statute has provided, by exception or proviso in section 94, that the municipality might, by the ordinance providing for the assessment, prescribe that a certain sum, not exceeding the percentum of the amount of such assessment named therein, be applied toward the payment of the costs specified in the section, and other costs of making and collecting the assessment. In the years between 1901 and 1917 this privilege of providing a fund to be applied to the payment of the costs specified and other costs of making and collecting the assessment, was limited to cities, towns and villages having a population of less than 100,000 inhabitants. (See amendments of 1901, 1917 and 1931; chap. 24, sec. 94, page 398, Hurd's Rev. Stats.

1901; chap. 24, sec. 94, page 519, Hurd's Rev. Stats. 1917; and chap. 24, sec. 94, page 525, Smith-Hurd Ill. Rev. Stats. 1931.) Since there is neither allegation nor proof that the defendant did, in the respective ordinances providing for the special assessments involved herein, exercise the privilege of prescribing a sum to be applied to the payment of the costs of making and collecting the assessments, these exceptions and provisos in section 94 are immaterial on this appeal.

██ The word "levy" as used in section 94, in the phrase "expense of making and levying special assessments or special taxes," includes the collection of the taxes. "Levy" is defined in Webster's New International Dictionary (2nd ed.) : "To raise or collect, as by assessment, execution or other legal process." In Gray v. Peoria Board of School Inspectors, 231 Ill. 63, 70, in speaking of the meaning to be given to the word "levy" as used in the statute there under consideration, the court said:

"As applied to taxation this word is given a variety of meanings, among others the following: 'To impose or assess;' 'to impose, assess and collect under the authority of law,' 'to raise or collect by assessment;' . . . (25 Cyc. p. 207, and authorities there cited.)"

The word as used in section 94 has been construed by our Supreme Court as including the collection of the special assessment. In Kerfoot v. City of Chicago, 195 Ill. 229, 233, where the statute as it existed in 1899 was involved, the court said:

"The estimate and assessment included the cost of making and collecting the assessment, amounting to $4075.57, and the assessment was confirmed, including that item. Section 94 of the act concerning local improvements provides that these costs and expenses shall be paid by the city out of its general fund. (Hurd's Stat. 1899, par. 600, p. 382.)"

In Gage v. City of Chicago, 195 Ill. 490, 494, where the amendment of 1901 was under consideration, collection of the assessment was again included in the phrase "levying of the assessment," the court saying:

"The petition herein was filed May 11, 1901, two days after the act amending the Local Improvement act of 1897 went into effect, May 9, 1901. (Laws of 1901, p. 101.) That act amended section 94 so as to restrict the right to apply six per cent of the amount of the assessment toward the payment of the costs connected with the proceedings, and the costs of making and collecting such assessment, to cities having a population of less than 100,000. . . . This proceeding was instituted two days after the amendments took effect. It was then no longer lawful for cities having more than 100,000 population to include costs in the total amount of the special assessment."

See McChesney v. City of Chicago, 205 Ill. 528, 529, 530; Lanphere v. City of Chicago, 212 Ill. 440, 442; City of Chicago v. Lake Forest University, 293 Ill. 165, 167 (amendment of 1917).

The cost of collecting the special assessment, being imposed on the defendant, the deduction of the 88 cents and one per cent items on each lot, block, tract or parcel of land bid in by defendant, was erroneous. The right of plaintiffs to these amounts is clear and unequivocal, and the issuance of the writ of mandamus was properly ordered.

The judgment is affirmed.

Affirmed.

FRIEND, P. J. and BURKE, J., concur.